**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                          Elisabeth A. Shumaker
Clerk                                                                          Chief Deputy Clerk

July 19, 2000

**TO:**    ALL RECIPIENTS OF THE OPINION

**RE:**    99-1263, *Herring v. Keenan*
Filed on July 10, 2000

The opinion filed in this matter contains a clerical error in the attorney section for the Defendant - Appellant.  The section should read "...with *her* on the briefs..." as opposed to "with him on the briefs."

A corrected copy of the first page of the opinion is attached.

Sincerely,

Patrick Fisher, Clerk of Court

By:
Daniel R. Sosa, Jr.
Deputy Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2000**

**PATRICK FISHER**
Clerk

SYLVIA HERRING AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF FREDERICK HERRING,

    Plaintiff - Appellee,

v.

KATHLEEN KEENAN,

    Defendant - Appellant.

No. 99-1263

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-WY-3196-WD)**

Freddi Lipstein, Attorney, Appellate Staff (David W. Ogden, Acting Assistant Attorney
General; Thomas L. Strickland, United States Attorney; Barbara L. Herwig, Attorney,
Appellate Staff, Department of Justice, with her on the brief), Washington, D.C. for
defendant-appellant.

Steven C. Choquette (A. Bruce Jones and Tiffany W. Smink of Holland & Hart LLP,
Denver, Colorado; Jay S. Jester of Miller, Jester & Kearney, Denver, Colorado in
association with the American Civil Liberties Union with him on the brief), for plaintiff-
appellee.

Before **SEYMOUR**, **ALARCÓN**,[*] and **BALDOCK**, Circuit Judges.

_____

**ALARCÓN**, Circuit Judge.

_____

Kathleen Keenan ("Keenan"), a federal probation officer, appeals from the order denying her motion to dismiss the claims filed against her by Frederick Herring ("Herring").[1] Herring alleged in his complaint, filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), that Keenan violated his federal constitutional right to privacy by stating to his sister, and the manager and acting director of the restaurant where he was employed as a waiter, that Herring had tested positive to human immunodeficiency virus ("HIV"). At the time of the disclosure, Herring was serving a period of probation under Keenan's supervision. The district court rejected Keenan's contention that she was entitled to qualified immunity because she did not violate a clearly established constitutional right. We conclude that there is a

[*]       The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1]       Since filing his original complaint, Frederick Herring passed away. His sister, Sylvia Herring, was substituted as plaintiff in the second amended complaint.

constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health. We reverse the denial of the motion to dismiss, however, because we hold that it was not clearly established, at the time Keenan disclosed to Herring's sister and his employer that Herring had tested positive for HIV, that a probationer had a constitutionally protected right to privacy regarding information concerning his or her medical condition.

I

Because we are reviewing the denial of a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, "we must accept all of the well pleaded allegations in the complaint as true." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). The following facts are alleged in the second amended complaint.

On or about September of 1993, Herring began serving a period of probation under Keenan's supervision following his conviction for driving while intoxicated on federal property. On or about December 22, 1993, Herring met Keenan as required by the terms of his probation. During their meeting, Herring informed Keenan that he had recently taken an HIV test and he thought he might be infected with the virus. Herring had not received the results of the HIV test at the time of this conversation. At no time did he inform Keenan that the results of the HIV test were positive. Herring did not authorize Keenan to disclose this information to anyone. On the date he disclosed this information

3

to Keenan, Herring was employed as a waiter at the 50's Café, a restaurant at the Lowry Air Force Base Recreation Center in Denver, Colorado.

Following the December 1993 meeting, Keenan informed Candice Clark, the manager of the 50's Café, that Herring was HIV positive. Keenan repeatedly stated to Candice Clark that Herring should be terminated from his position.

In a telephone conversation with Sylvia Herring, Herring's sister, Keenan told her that Herring had been tested for HIV and/or was HIV positive. Prior to Keenan's disclosure, Sylvia Herring was unaware that her brother had been tested for HIV or might be HIV positive.

On or about January 10, 1994, Keenan informed John Casey, the acting director of the 50's Café, that Herring was HIV positive. She demanded that Herring be fired because she believed that Colorado law prohibited a person who has tested as HIV positive from working in a food preparation position.

The complaint also alleges that:

Defendants' conduct was in blatant violation of Volume X, Sec. 16 D and F of the Guide to Judiciary Policies and Procedures which provides that probation officers "should not disclose HIV infection or illness information to the offender's family members, parents, or sexual/drug partners without the offender's informed, written consent" and that "notification of other third parties is the responsibility of the exposed person."

II

Herring filed this action on December 21, 1995, in the district court. He alleged that Keenan's disclosures violated his constitutional right to privacy, and his statutory

4

right to be protected from disclosure of a record pursuant to the Privacy Act, 5 U.S.C. § 552(b). Herring died on July 23, 1996. Sylvia Herring was appointed the personal representative of Herring's estate on or about October 16, 1996.

As Herring's personal representative, Ms. Herring filed a second amended complaint against Keenan on December 9, 1996. In the second amended complaint, Ms. Herring ("the plaintiff") alleged that Keenan's disclosures violated Herring's constitutional right to privacy, constituted cruel and unusual punishment in violation of the Eighth Amendment, and deprived Herring of his liberty without due process of law in violation of the Fifth Amendment. In the second amended complaint, the plaintiff prayed for damages and a declaration of his constitutional rights.

Keenan filed a motion to dismiss the second amended complaint on January 24, 1997, pursuant to Rule 12(b)(1) and Rule 12(b)(6) in which she asserted the defense of qualified immunity. She argued that the second amended complaint should be dismissed because it fails to allege that Keenan engaged in conduct that violated clearly established law. On January 8, 1999, the district court referred the motion to dismiss to a magistrate judge for a report and recommendation regarding whether the facts alleged in the second amended complaint demonstrated that Keenan's disclosures violated clearly established law.

The magistrate judge submitted his report and recommendation on February 24, 1999. He recommended that the motion to dismiss should be granted on two grounds.

5

First, the second amended complaint failed "to present factual allegations which would demonstrate that Keenan's disclosures were not supported by a compelling interest." Second, "in late 1993, the contours of the right of privacy were not sufficiently clear to place a probation officer on notice that disclosure of a probationer's HIV test or HIV status to his employer and his close relative would violate this right."[2] The magistrate judge also noted that "[n]o decision of the United States Supreme Court or the United States Court of Appeals for the Tenth Circuit has specifically considered the parameters of the constitutional right to privacy in the context of the limited governmental disclosure of one's HIV status."[3]

On May 5, 1999, the district court entered its order denying Keenan's motion to dismiss the right to privacy claim. The court dismissed with prejudice Herring's Eighth Amendment claim, and his claim that Keenan's disclosures deprived him of his liberty without due process of law. The district court also dismissed the request for a declaratory judgment.

The district court held that the allegations in the second amended complaint that Keenan had violated the guidelines for probation officers for supervising probationers

---

[2] The second amended complaint also alleges on information and belief that Keenan also contacted Herring's roommate to tell him that Herring was HIV positive. This allegation was withdrawn by Herring's counsel during the April 2, 1997, hearing on the motion to dismiss.

[3] In the responsive brief, the plaintiff concedes that A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir. 1994) was "overlooked" by the parties when the motion to dismiss was pending in the district court.

exposed to HIV were sufficient to satisfy the plaintiff's burden of demonstrating that the disclosures were not supported by a compelling interest. The district court also held that this court's decisions in Eastwood v. Department of Corrections of the State of Okla., 846 F.2d 627 (10th Cir. 1988), and Lankford v. City of Hobart, 27 F. 3d 477 (10th Cir. 1994), demonstrate that "the contours of the constitutional right to privacy as it relates to dissemination of one's actual or potential HIV status were clearly established in late 1993."

Keenan filed this timely interlocutory appeal on June 3, 1999. "A defendant may immediately appeal the denial of a 12(b)(6) motion based on qualified immunity to the extent it turns on an issue of law." Prager v. LaFaver, 180 F.3d 1185, 1190 (10th Cir. 1999) (citing Behrens v. Pelletier, 516 U.S. 299, 307 (1996)).

III

Keenan contends that the district court erred in rejecting her qualified immunity defense because "[a]t the time of the alleged disclosures in this case, there were no Supreme Court or Tenth Circuit decisions addressing whether limited disclosure of information regarding a probationer's HIV status fell within a clearly established constitutional right of privacy." This court reviews the denial of a motion to dismiss de novo. Prager, 180 F.3d at 1190.

The Supreme Court has instructed that in reviewing the denial of a claim of

7

qualified immunity, "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established." Conn v. Gabbert, 526 U.S. 286, 290 (1999). "To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997).

A

The second amended complaint alleges that Keenan violated Herring's right to privacy by disclosing information regarding his HIV status to his sister and his employer. Our threshold question, therefore, is whether there is a constitutional right to privacy that protects information concerning a person's health from being disclosed to others by government officials. Keenan contends that there is no clear right to privacy in the non-disclosure of such personal information because the Supreme Court has never directly held that such a right exists. This circuit, however, has repeatedly interpreted the Supreme Court's decision in Whalen v. Roe, 429 U.S. 589 (1977), as creating a right to privacy in the non-disclosure of personal information. See e.g., Slayton v. Willingham, 726 F.2d 631, 635 (10th Cir. 1984) (holding that the Supreme Court explicitly recognized the constitutional right to privacy in Whalen v. Roe); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986) ("Due process thus implies an assurance of confidentiality with respect

8

to certain forms of personal information possessed by the state."); Eastwood, 846 F.2d at 630-31 (10th Cir. 1988) ("This penumbra [of a variety of provisions in the Bill of Rights] protects two kinds of privacy interests: the individual's interest in avoiding disclosure of personal matters and the interest in being independent when making certain kinds of personal decisions."); Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir. 1989) ("The Supreme Court has recognized that the constitutional right to privacy protects an individual's interest in preventing disclosure by the government of personal matters.")

This court's 1994 decision in A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir. 1994), is the first case in this circuit that recognized that there is a constitutional right to privacy regarding disclosure by a police officer of the results of an arrestee's HIV test. Id. at 990-91. In so holding, this court stated: "There is no dispute that confidential medical information is entitled to constitutional privacy protection." Id. at 990. When the plaintiff in A.L.A. was arrested, he had a piece of paper in his wallet that indicated he had tested positive for HIV. Id. The district court granted summary judgment on the basis that the plaintiff lacked standing because a subsequent test disclosed that he had never been infected with HIV. Id. This court reversed and held that the plaintiff had standing, reasoning that the actual validity of the test was "entirely irrelevant to whether he has a reasonable expectation of privacy in the results." Id. Based on the foregoing Tenth Circuit authority, we conclude that Herring alleged a violation of a constitutional right to privacy in the non-disclosure of information regarding one's HIV status by a

9

government official.

B

Even though a plaintiff correctly alleges a violation of a constitutional right, he or she has the burden of demonstrating that the law was clearly established at the time of the deprivation of that right. See Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991). A plaintiff "cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." See id. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

To determine whether the contours of the right to privacy in this matter were sufficiently clear in late 1993, we must consider whether there was sufficient correspondence between Keenan's conduct and the prior law establishing the right to non-disclosure of personal matters by a government officer. See Hilliard, 930 F.2d at 1518 (requiring a substantial correspondence between the conduct and prior case law); Eastwood, 846 F.2d at 630 (requiring "some but not precise factual correspondence."). A plaintiff need not demonstrate that the specific conduct in this case had previously been held unlawful, so long as the unlawfulness was "apparent." See Hilliard, 930 F.2d at 1518. A plaintiff may satisfy his or her burden by showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts. Anaya v. Crossroads Managed Care Systems, Inc., 195

10

F.3d 584, 594 (10th Cir. 1999).

While A.L.A. is clear authority for the principle that under certain circumstances the disclosure of an individual's HIV status may violate a constitutional privacy protection, it was decided in 1994, after Keenan's disclosures in this matter.[4] Furthermore, it does not answer the question whether, in 1993, a probation officer violated clearly established law by disclosing to a close relative and a restaurant employer of a probationer that he had tested positive for HIV. The parties have not cited a case, nor has our research disclosed any Supreme Court or Tenth Circuit decision that has addressed this question.

Though the Supreme Court has not addressed the question whether the right to privacy applies to a limited disclosure of a probationer's HIV status to his or her sister or restaurant employer, the Court has distinguished between the rights available to an ordinary citizen under the Fourth Amendment, and the privacy rights of a probationer. Griffin v. Wisconsin, 483 U.S. 868, 873-875 (1987). In Griffin, the Court reasoned that probation "[s]upervision, then, is a 'special need' of the State permitting a degree of

---

[4]The plaintiff argues that even though A.L.A. was not decided until 1994, the opinion demonstrates that the right to privacy in the non-disclosure of one's HIV status was clearly established in 1989 because the disclosure in that case was made in 1989. In A.L.A., however, this court did not consider whether that right was clearly established in 1989 or whether the government official that disclosed the information was entitled to qualified immunity. 26 F.3d 989. Rather, this court held that, in 1994, confidential medical information is protected and the plaintiff had standing to pursue a claim for the disclosure of that information. See id. at 990.

11

impingement on privacy that would not be constitutional if applied to the public at large." Id. at 875. The Court upheld a state regulation permitting the search of a probationer without a warrant or probable cause. Id. at 875-76. In view of the fact that it was clearly established in Griffin that a probationer's right to privacy is limited, without further guidance from the Supreme Court or this circuit, a reasonable probation officer in late 1993 could not be presumed to know whether a limited disclosure of a probationer's HIV status to his sister and restaurant employer would violate a probationer's constitutional rights.

In rejecting the magistrate judge's recommendation to dismiss the action, the district court stated that "Eastwood and Lankford clearly establish a right to privacy" regarding information concerning a person's HIV status. The district court held that "it was Ms. Keenan's responsibility 'to relate established law to analogous factual settings.'" Quoting Eastwood, 846 F.2d at 630. Since Lankford was not decided until June 14, 1994, Keenan could not have related the holding in Lankford to the question whether disclosing to Herring's sister and his employer that Herring was HIV positive violated his constitutionally protected right to privacy. Though Eastwood was an available source in 1993 for a reasonable government officer seeking "analogous factual settings," in order to avoid intruding on an individual's constitutional right to privacy, the facts alleged in the complaint in Eastwood bear no resemblance to the conduct attributed to Keenan in this matter.

12

In Eastwood, the plaintiff, an employee of the Oklahoma Department of Corrections ("DOC"), sought damages pursuant to 42 U.S.C. § 1983 against fellow DOC employees for violating her right to privacy, and sexually harassing her, resulting in "an offensive work environment." 846 F.2d at 630. Eastwood's complaint alleged that (1) a DOC investigator forced her to answer a number of embarrassing questions about her sexual history; (2) DOC employees published "offensive and insulting drawings of her within the DOC facility;" and (3) DOC employees repeatedly made "insulting and offensive remarks" about her. Id. at 630-31. In response to these allegations, the DOC employees argued that the questions concerning the plaintiff's sexual history were designed to test the validity of her complaint that she had been sexually assaulted and molested by a DOC employee who had put a drug into her drink to cause her to lose consciousness. Id. at 631. This court concluded that a trier of fact could find, instead, that the defendants' motive in forcing her to reveal her prior sexual history, and their subsequent conduct, including the publication of offensive drawings, was "to harass plaintiff into dismissing the complaint and quitting her job." Id. at 631. Based on this analysis of the facts alleged in the complaint, this court affirmed the district court's order denying the motion to dismiss [on the basis of qualified immunity.] Id.

The dispositive facts relied upon by the court in Eastwood are in stark contrast to those alleged in the second amended complaint. Eastwood was a state employee, free from any restrictions on her federal constitutional rights. Herring was a probationer

13

subject to some limitations on his constitutional rights because of his status. Eastwood was forced by a DOC investigator to disclose information about her sexual history, ostensibly to verify her accusation of sexual harassment by a fellow employee. Herring voluntarily informed his probation officer that he had taken an HIV test and believed that he might be infected with that virus. This court concluded that the fact that Eastwood's fellow employees published offensive and insulting drawings within DOC facilities, and made insulting and offensive remarks concerning her, supported an inference that the DOC defendants' motive was to create a hostile work environment in order to harass her into withdrawing her complaint and terminating her employment. Herring did not allege any facts showing that Keenan had a comparable, improper motive in her limited disclosures concerning Herring's medical condition. To the contrary, the second amended complaint alleges facts that demonstrate that Keenan's sole purpose was to protect others from being accidentally exposed to HIV. The plaintiff alleged in the second amended complaint that Keenan disclosed Herring's medical condition to his employer, and requested that Herring be discharged, because she believed that it was unlawful under Colorado law for a restaurant to employ a person as a waiter who has tested positive for HIV.

There is no substantial correspondence between Keenan's limited disclosure to Herring's sister and his employer of personal medical information volunteered to her by Herring and the conduct of the DOC investigator in Eastwood in forcing a fellow

14

employee to reveal information about her prior sexual history as part of a sexual harassment campaign to induce her to quit her job. 846 F.2d at 631. Furthermore, even if we were to agree with the plaintiff that this court's holding in Lankford applies to conduct committed prior to the publication of that decision in 1994, that matter involved the seizure from a local hospital by a police chief of private medical records of a police dispatcher in order to prove that she was a lesbian. 27 F.3d at 479. No comparable abuse of authority occurred in the matter sub judice. Herring voluntarily disclosed medical information to his probation officer, who in turn disclosed the information under the belief that it was against Colorado law for an HIV positive person to be employed as a waiter in a restaurant.

The district court's reliance on Mangels v. Pena, 789 F.2d 836 (10th Cir. 1986), is also misplaced. Though this court recognized in Mangels that information of an intimate or otherwise personal nature may be constitutionally protected, this court concluded that the plaintiffs had no legitimate expectation of privacy and that their constitutional rights were not violated. In Mangels, the plaintiffs, two fire fighters employed by the Denver Fire Department, brought an action under 42 U.S.C. § 1983 against the City and County of Denver, the Mayor of Denver, the fire chief of the Denver Fire Department, and the Civil Service Commission of the City and County of Denver. They alleged, inter alia, that the defendants violated their right to privacy by disclosing a police report to the media that contained statements by the plaintiffs and witnesses, and the reports of

15

polygraph examinations, indicating that the plaintiffs had used contraband drugs. The district court determined that "the right to privacy does not encompass the kind of information allegedly released to the media." Id. at 838. This court affirmed the district court's dismissal of the action. Id. at 840. In support of its decision, this court reasoned as follows: "Validly enacted drug laws put citizens on notice that this realm is not a private one. Accurate information concerning such unlawful activity is not encompassed by any right of confidentiality, and therefore it may be communicated to the media." Id. at 839.

The facts in this case bear little resemblance to the disclosure to the media in Mangels that two firefighters had used contraband drugs. In Mangels, as in Eastwood, the plaintiffs were government employees of the defendants. Unlike Herring, they had no restrictions on their personal freedom. In Mangels, the publication of the police report was made to the media. Herring's complaint does not allege that Keenan's disclosure was released to anyone other than his sister and restaurant employer. Furthermore, this court ultimately concluded in Mangels that there was no violation of the plaintiffs' constitutional right to privacy. The mere recognition in Mangels that in some cases disclosure of personal information will result in a constitutional violation was not sufficient to put a probation officer on notice that the disclosure of a probationer's HIV status to his sister and employer would violate the constitutional right to privacy.

Thus, while Eastwood, Lankford, and Mangels indicate that under some

16

circumstances, a release of personal information regarding a person by a government officer may violate a constitutionally protected right to privacy, none of the cases discuss the question whether the right to privacy protects a probationer who may be HIV positive from a limited disclosure by his or her probation officer to persons whom the probation officer believed might be affected by their contact with the probationer. The cases, therefore, did not clearly establish such a right in 1993.

We also emphasize that the district court and the magistrate judge each considered the same Tenth Circuit authority cited by the plaintiff in her opposition to the motion to dismiss. The magistrate judge, after analyzing Mangels, Eastwood, and Lankford, concluded that a reasonable probation officer "would not have known in late 1993 that the disclosure of a probationer's HIV status to his employer, sister, and roommate was an unconstitutional infringement of the right [to privacy]." The district court, after construing the same cases, concluded that "the contours of the constitutional right to privacy as it relates to dissemination of one's actual or potential HIV status were clearly established in 1993."

The plaintiff asserts that no less than seven federal courts outside of the Tenth Circuit have "recognized the existence of a constitutionally protected privacy interest in maintaining the confidentiality of an individual's HIV status." None of these cases, however, address the question we must decide. See Glover v. Eastern Nebr. Com. Office of Retardation, 686 F. Supp 243, 250-51 (D. Neb. 1988) (holding that a policy requiring

17

employees to submit to mandatory AIDS testing can be enjoined as violative of the Fourth Amendment), aff'd, Glover v. Eastern Nebr. Com. Office of Retardation, 867 F.2d 461, 463-64 (8th Cir. 1989); Woods v. White, 689 F. Supp 874, 877 (W.D. Wis. 1988) ("Casual unjustified dissemination of confidential medical information [regarding a prison inmate] to non-medical staff and other prisoners can scarcely be said to belong to the sphere of defendants' discretionary function."); Doe v. Borough of Barrington, 729 F. Supp. 376, 382-85 (D.N.J. 1990) (holding that the disclosure by arresting officers to a neighbor that the husband and father of the plaintiffs had AIDS violated the Fourteenth Amendment rights of his wife and children); Doe v. City of Cleveland, 788 F. Supp 979, 986 (N.D. Ohio 1991) (holding that police officers sued in their official capacity are not liable for a violation of a privacy interest where the police department did not have a policy of deliberately failing to train its officers with respect to the confidentiality of records); Doe v. Township of Plymouth, 825 F. Supp. 1102, 1107, 1109 (D. Mass. 1993) (holding that the plaintiff had presented sufficient evidence of a violation of the right to privacy to withstand a motion for a summary judgment where she presented evidence that a police officer forced the victim of a theft to admit she had AIDS before he would return a prescription medication that had been stolen from her residence); Doe v. City of New York, 15 F.3d 264, 269 (2d Cir. 1994) (holding that the plaintiff had a right of privacy in the contents of a settlement agreement that stated that the plaintiff had sued his employer for failing to hire him because he was a single gay male and because his employer

18

suspected that he had AIDS).

None of the cases identified by the plaintiff involved a limited disclosure by a probation officer to a probationer's sister and restaurant employer of voluntarily exposed information that the probation officer believed was necessary to protect them from the possibility of an inadvertent exposure to HIV. Though a plaintiff is not required to show that the specific conduct was previously found to have been held unlawful, there must be a substantial correspondence so that the unlawfulness was apparent. See Hilliard, 930 F.2d at 1518. In the present case, the plaintiff has shown that there is "a clearly established right in the abstract" to privacy from disclosure of personal information by government officials. See Id. The plaintiff has not shown, however, that the district court cases cited amount to a sufficient weight of authority establishing a clearly established right of privacy in this case. The plaintiff has further failed to demonstrate that the contours of that right were sufficiently clear in late 1993 so that a reasonable probation officer would understand that he or she could not disclose to a probationer's close relative or restaurant employer that the probationer had tested positive to HIV. The plaintiff has failed to demonstrate a substantial correspondence between Keenan's disclosures and conduct that has been held to violate the right to privacy in prior decisions. See id.

The plaintiff also argues that a reasonable government officer in Keenan's position would have known that she was violating Herring's clearly established constitutional right to privacy because the policies governing Keenan's conduct as a probation officer

19

prohibited her from disclosing his HIV status without his consent. See Guide to Judicial Policies and Procedures, Vol. X, ch. IV, p. 16, sec. 16(D). This court has held, however, that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy. See Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 647 (10th Cir. 1988) (quoting Davis v. Scherer, 468 U.S. 183, 194 (1984)). In Davis, the Supreme Court held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." 468 U.S. at 194. The Court warned that to hold otherwise would subject officials to liability for a violation of any constitutional right, including those that were not foreshadowed at the time of the violation, simply because the conduct violated a regulation. See id. at 195. The Court also cautioned that subjecting officials to a risk of liability for violation of policies and regulations would be particularly unsound policy given that government officials are often "subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." Id. at 196 (internal quotations and citation omitted). To ensure that a government official is subject to liability only for a violation of a clearly established constitutional right, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." Anaya, 195 F.3d at 594. Thus, without a stronger indication from the courts that a

20

reasonable probation officer in Keenan's position would have known that she was violating Herring's constitutional rights by disclosing his HIV status, rather than simply violating an internal policy, we cannot say that Keenan violated Herring's clearly established constitutional right to privacy.

A reasonable government officer is presumed to be mindful of clearly established law. V-1 Oil Co. v. Wyoming, 902 F.2d 1482, 1493 (10th Cir. 1990). In late 1993, however, there were no decisions from any federal court that discussed whether a probation officer had a duty not to disclose to a probationer's sister and his restaurant employer the fact that a probationer had voluntarily reported that he had taken an HIV test and might be infected with HIV. The published decisions in late 1993 had made it clear that the constitutional right to privacy precluded government officers from forcing a fellow employee, Eastwood, 846 F.2d at 631, or the victim of a crime, Township of Plymouth, 825 F. Supp. at 1109, to disclose personal information. It was also clear that ordinary citizens had the right to be free from the disclosure of personal information for an improper motive, such as sexual harassment, Eastwood, 846 F.2d at 631, and that a prisoner had the right to be free from the disclosure of his medical information to non-medical staff and other prisoners, Woods, 689 F. Supp. at 877. These cases did not clearly establish that the limited right of privacy enjoyed by a probationer would be violated by the disclosure of personal information alleged in the second amended complaint. Neither did the internal policies governing the conduct of a probation officer

21

clearly establish such a constitutional right. Thus, Keenan is entitled to qualified immunity for her disclosures of Herring's HIV status to his sister and employer.

CONCLUSION

We reverse the district court's order denying Keenan's motion to dismiss because we hold that the district court erred in ruling that Keenan violated Herring's clearly established right to privacy when she disclosed in 1993 that he was HIV positive to his restaurant employer and his sister. The district court erred in concluding that Keenan was not entitled to qualified immunity.

The judgment of the United States District Court for the District of Colorado is REVERSED and REMANDED for further proceedings in accordance with this opinion.

**No. 99-1263,** *Herring v. Keenan*

**SEYMOUR, Chief Judge, dissenting.**

In holding that a probationer's constitutional privacy right to non-disclosure of his confidential medical information by his probation officer was not clearly established in late 1993, the majority extrapolates from the Supreme Court's bare holding in *Griffin v. Wisconsin*, 483 U.S. 868 (1987), without addressing the underlying analysis and reasoning used therein, ignores other circuit precedent on point, and requires an inappropriately exacting factual similarity between prior cases and the case at bar. In my judgment, at the time of the events at issue, the law was clear that Mr. Herring enjoyed constitutional privacy protection against involuntary disclosures of personal information because there was no legitimate governmental interest in the disclosure, and Ms. Keenan's disclosure of such information was objectively unreasonable. For these reasons, I respectfully dissent.

**I**

In assessing whether a qualified immunity defense lies for a government official, we make two inquiries: "First, we must ask what was the clearly established law with regard to the plaintiff['s] constitutional rights at the time

those rights were allegedly violated by [the official]. . . . Second, if the law was clearly established, we must ask whether [the official's] conduct was 'objectively reasonable' in light of this clearly established law." *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997).

## A. Clearly established law as it existed in 1993

Ms. Keenan's conduct here occurred in late 1993. By then, as the majority acknowledges, this circuit had clearly recognized that the constitutional right to privacy as defined by *Whalen v. Roe*, 429 U.S. 589 (1977), includes an individual's interest in avoiding disclosures of sensitive personal matters. *See Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989); *Eastwood v. Department of Corrections*, 846 F.2d 627, 630-31 (10th Cir. 1988); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986); *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir. 1984). To ascertain whether Ms. Keenan's conduct violated this clearly established law, I agree with the majority that we must determine to what extent in 1993 this constitutional right applied to a probationer against disclosures by a probation officer. Precedent from the Supreme Court and other circuits establishing the privacy rights of prisoners and probationers guides this undertaking.

### 1. *Griffin*

As the majority acknowledges, in 1987 the Supreme Court in *Griffin*

upheld a probation regulation against a probationer's challenge that it violated his Fourth Amendment rights. The regulation at issue there required probationers to consent to a search of their homes anytime a probation officer had "reasonable grounds" to believe an offense was being committed. In reaching its conclusion, the Court began its analysis with the statement that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled but only . . . conditional liberty,'" due to the State's interests in reducing recidivism and ensuring the community is not harmed by the probationer's being at large. *Griffin*, 483 U.S. at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Significantly, the Court recognized that while these state interests "permit[] a degree of impingement upon privacy that would not be constitutional if applied to the public at large[, t]*hat permissible degree is not unlimited, . . . .*" *Id.* at 875 (emphasis added). Only after recognizing the probationer's general right to privacy did the Court turn to the question of whether this right was overly impinged by the probation regulation, a determination made by balancing the probationer's rights against the governmental interests associated there. *Griffin*, therefore, clearly established six years prior to the incidents here that probationers retain a right to privacy under the Constitution which is violated where the State impinges upon that right without a legitimate, governmental purpose.

3

The majority here simply relies upon the Court's approval of the regulation in *Griffin* to conclude that Mr. Herring's privacy right was not clearly established in this case. In so doing, the majority extrapolates from the Court's naked holding without ever acknowledging the underlying analysis and reasoning, and fails entirely to apply that analysis and reasoning to the facts of this case. The majority thus ignores the clear holding in *Griffin* that a probationer has a constitutional right to privacy which is only limited insofar as the limitation is justified by "the 'special need[s]' of the probation system." *Id.* at 875. *See also Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that prison regulations impinging on prisoners' constitutional rights are only valid where reasonably related to legitimate penological interests); *Doe v. Attorney Gen.*, 941 F.2d 780, 796 (9th Cir. 1991) (in 1988, law was clear that government may use private information only if it can show that its use of the information advances a legitimate state interest).

Although the legitimacy of the governmental interest was crucial to the *Griffin* analysis, the majority fails to address what interest is at issue here. This flaw proves fatal to its reasoning because, simply put, there was no legitimate governmental interest in Ms. Keenan's conduct. Her unauthorized actions were both erroneous and objectively unreasonable because she acted in violation of both established probation procedures and Colorado state law.

4

In making the disclosures to Mr. Herring's family and employer, Ms. Keenan acted contrary to every written guideline addressing the disclosure of confidential medical information contained in the U.S. Probation Manual, which serves as "the authoritative standard for community supervision of federal offenders." Guide to Judiciary Policies and Procedures, vol. X (U.S. Probation Manual) [hereinafter Manual], ch. IV, at 1; *see* App.A-1.[1] The Manual clearly states the goal of "protecting the confidentiality of exposed persons" in their HIV status, *id.*, and mandates that "[o]fficers should not disclose HIV infection or illness information without the offender's informed written consent," *id.* at 16; App. at A-2. The Manual further prohibits probation officers from disclosing information to employers without written approval by the officer's supervisor or chief probation officer. *Id.* at 38; App. at A-7. If the probationer opposes such disclosure, it may not be made without a hearing by the court. *Id.* Finally, the disclosure can only be with regard to a reasonably foreseeable risk the probationer

---

[1] All of the guidelines referred to herein are set out in full as an appendix to this opinion. *See* App. A-1-A-8. These guidelines are promulgated by committees composed of federal judicial officers, and are prepared and distributed by the Director of the Administrative Office under the supervision and direction of the Judicial Conference. 28 U.S.C. § 604(d)(4). *See also* Guide to Judiciary Policies and Procedures, vol. X, ch. IV at 16; App. at A-6 (guidelines governing supervision of HIV-infected offenders promulgated by the United States Judicial Conference Committee on Criminal Law and Probation Administration); *id.* at 36; App. at A-5 (standards governing disclosure of third-party risk information promulgated by the Office of General Counsel).

poses to the employer or the public, *and the risk must be related to the offender's past criminal conduct.*[2]  *Id.* at 36-37; App. at A-6.

Ms. Keenan also violated state criminal law, which prohibits the disclosure of medical information to unauthorized persons.  *See* Colo. Rev. Stat. § 18-4-412 (criminalizing the disclosure of medical information to an unauthorized person without prior written authorization); Colo. Rev. Stat. § 24-4-1402 (the only authorized disclosures are by medical personnel treating patients and made in the form of reports to the state or local department of public health).  In fact, Ms. Keenan's Manual specifically warned her that state civil and criminal penalties could attach to the violation of a probationer's confidentiality surrounding his HIV status, and instructed her to learn the applicable state law.  *See* Manual, ch. IV, at 16, App. at A-2.  In addition, Ms. Keenan was required to consult with the probation office's expert on HIV and state confidentiality laws upon learning of Mr. Herring's possible HIV status, a regulation undoubtedly intended to avert the sort of violation which occurred here.     *See id.*  at 18; App. A-2, A-4.

Despite the statutes and guidelines described above, the government argues that Ms. Keenan disclosed Mr. Herring's purported HIV status to his employer and family to prevent him from breaking Colorado law while on probation, citing

---

[2]Mr. Herring's criminal offense was driving while intoxicated, hardly the type of activity that risks the transmission of HIV to family members, co-workers, and restaurant patrons.

Colo. Rev. Stat. § 25-4-108. [3] It is clear, however, that Mr. Herring was not violating section 25-4-108, which prohibits a person with a contagious disease from working in the food service industry, because this statute is inapplicable to HIV-positive individuals under Colorado's health code. *See* Colo. Code Regs. § 11CR1, Reg. 6 (only persons prohibited from working in food service pursuant to § 25-4-108 are those infected with a disease transmittable through food handling). Morever, reliance on this law was unreasonable because it was antiquated (passed in 1913 and amended once in 1921) and has never been applied in any published case. In fact, the only annotation to this statute contained in Colorado's official reporter cites to an article, published in 1988, describing the *inapplicability* of the statute in the context of HIV-positive employees. [4]

---

[3]The government also argues that Ms. Keenan's disclosure was intended to avert the risk of HIV infection to the café's customers and employees, and to Mr. Herring's family. In 1993 it was common knowledge that HIV transmission only occurs through the exchange of bodily fluids, most often through sharing needles or unprotected sexual intercourse. *See, e.g.*, *Harris v. Thigpen*, 941 F.2d 1495, 1503 (11th Cir. 1991) ("virtually no evidence exists that HIV is spread through casual (even intimate) non-sexual contact; . . . food; inanimate objects, e.g. toilet seats, drinking fountains or eating utensils; insects; skin; vaccines; or water"). There is no evidence in the record that Mr. Herring was an intravenous-drug user or that he was having sexual relations with his family, his co-workers, or anyone at the café. Therefore, the risk that he would transmit the disease to any of these people was undeniably remote.

[4]*See* Edward P. Richards, *Communicable Disease Control in Colorado: A Rational Approach to AIDS*, 65 D EN. U.L. R EV. 127, 144-45 (1988). The article not only states that this law is inapplicable to persons who are HIV-positive, it also highlights that reporting a person's HIV status to anyone other than the

(continued...)

The Manual's guidelines, with their reference to state statutes, reflect a reasoned governmental commitment to preserve a probationer's privacy in his confidential medical information. It is significant that in *Griffin* the Court was called upon to analyze the legitimacy of a governmental interest embodied in an officially established policy. There the Court assessed the probation regulation's constitutionality in light of the probation system's asserted special needs underlying it. *See Griffin*, 483 U.S. at 875-79. Importantly for our purposes, the Court concluded that the search of a probationer's residence was "reasonable within the meaning of the Fourth Amendment *because it was conducted pursuant to a valid regulation governing probationers*," *id.* at 880 (emphasis added), which was itself justified by the special needs of the probation system making the warrant requirement impractical.

Here, however, we are asked to review the independent action of a probation officer which was *directly contrary to* the published guidelines of the U.S. Probation Office. Ms. Keenan cannot plausibly argue that her random, unauthorized and illegal conduct provides a basis for a legitimate or reasonable governmental interest sufficient to warrant the intrusion on Mr. Herring's privacy

---

[4](...continued)
Colorado Department of Health is criminalized under Colorado law. Had Ms. Keenan checked this law in the statute books, she would have known it was not applicable to Mr. Herring and that her disclosure was in fact a crime under Colorado law.

rights which occurred here. [5]

It is true that violation of internal guidelines, or even state laws, does not undermine a qualified immunity defense where the constitutional right was not otherwise clearly established. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984). Such violations may be considered, however, where they are relevant to the constitutional interest itself. *See id.* at 193 n.11 (recognizing that laws and regulations "may bear upon" the existence of a constitutional interest). Ms. Keenan's violation of her own guidelines and state laws serves to point up the fact that her actions served no legitimate probation interest to balance against Mr. Herring's privacy right. Without such an interest, as *Griffin* makes clear, the

_____

[5]The government argues that because Ms. Keenan would have to balance the government's interests to determine whether her conduct would violate Mr. Herring's constitutional right to privacy, the law could not be clearly established. It is true that where a constitutional deprivation is determined by balancing opposing factors, this mitigates against a finding of clearly established law. *See Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, we have stated on numerous occasions that qualified immunity is nevertheless abrogated if it was "sufficiently clear that Defendants should have known the [governmental] interests would not survive a balancing inquiry." *Patrick v. Miller*, 953 F.2d 1240, 1246, 1249 (10th Cir. 1992). *See also Prager v. LaFaver*, 180 F.3d 1185, 1191-92 (10th Cir. 1999) (balance in favor of plaintiff should have been anticipated by officials and thus their qualified immunity was abrogated), *cert. denied* 120 S. Ct. 405; *Medina*, 960 F.2d at 1498 ("[C]onduct may be so egregious that a reasonable person would know it to be unconstitutional even though it is judged by a balancing test."). Because there was no legitimate governmental interest to be balanced here, and in light of the fact that her conduct violated state law and her own guidelines, Ms. Keenan should not be able to claim qualified immunity simply because there was a balancing test involved.

9

impingement on Mr. Herring's right to privacy right is impermissible under the Constitution.

## 2. Other circuit authority

As the majority correctly recites, whether a right was clearly established turns not only on whether there is Supreme Court or Tenth Circuit precedent on point, but alternatively, on the "weight of authority from other courts." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 594 (10th Cir. 1999). Notwithstanding this, the majority ignores the two cases in the federal courts of appeals with the most substantial factual correspondence to the case at bar, *see Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991), and *United States v. Stine*, 675 F.2d 69 (3d Cir. 1982), while concluding that the right was not clearly established because there was no "further guidance from the Supreme Court or this circuit," Maj. Op. at 12.

These two cases, like *Griffin*, start from the premise that an offender retains a constitutional privacy right which must be balanced against the government's legitimate interests to determine whether the probationer's rights are impermissibly impinged. In *Thigpen*, the Eleventh Circuit evaluated a prison policy which segregated inmates on the basis of their HIV status, thereby necessarily disclosing the inmates' status to other prisoners, prison officials, and visitors. The court recognized "the general principle" that prisoners retain their

10

constitutional rights, including the right to privacy, so long as they are not inconsistent with inmate status or legitimate penological interests. *See* 941 F.2d at 1512-13 (citing *Turner*, 482 U.S. at 84, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), *and Houchins v. KQED, Inc.*, 438 U.S. 1, 5 n.2 (1978)). After balancing the prisoners' privacy interests against the government's asserted interests in segregating HIV-positive inmates from the general prison population to prevent transmission to other inmates and protect prison guards, the court concluded that the HIV segregation policy was reasonable and therefore not a violation of the prisoners' privacy rights. *See id.* at 1521.

Similarly, in *Stine*, the Third Circuit employed the same analytical framework to uphold a probation condition requiring a probationer to undergo psychological counseling against his challenge that the requirement violated his constitutional right to privacy. In so holding, the court specifically stated that a probation condition which impinges on constitutional rights will be upheld only where the condition of probation is reasonably related to the purposes of probation and the impact on the probationer's privacy rights is no greater than necessary to carry out these purposes. *See* 675 F.2d at 72. [6]

---

[6]In contrast to *Thigpen* and *Stine*, the Sixth Circuit held in 1981 that no one has a general constitutional right to privacy in the non-disclosure of personal information. *See J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981). This one case does not minimize the clear weight of our circuit's pre-1993 authority holding

(continued...)

11

A comparison of the legitimate governmental interests in *Thigpen* and *Stine* illustrates how devoid Ms. Keenan's actions were of any significant probation interest. The government's interests in segregating the prisoners in *Thigpen* was to reduce potential transmission of HIV in light of common documented risks existing in a prison environment, which included bloody fights, intravenous-drug use and needle-sharing, tattooing, and unprotected sexual activity. *See Thigpen*, 941 F.2d at 1516-19. The government's interests in the psychological counseling requirement in *Stine* was to promote rehabilitation and decrease the likelihood of recidivism. *See Stine*, 675 F.2d at 71-72. Those important penological and treatment interests justified the intrusions on individual privacy rights at issue in *Thigpen* and *Stine*.[7] As discussed above, Ms. Keenan's actions in the present case represent no such interests; her conduct neither assisted in Mr. Herring's rehabilitation nor protected anyone from a foreseeable risk of HIV transmission.

In sum, the law was clear in late 1993 that the Constitution provides a

---

[6](...continued)
that such a constitutional privacy right does exist, *see* discussion *supra* at 2, and *Thigpen* and *Stine*'s application of that right to prisoners and probationers.

[7]Moreover, as in *Griffin*, it was an *officially established* requirement in *Thigpen* and *Stine* that was balanced against the plaintiffs' privacy rights. *See Thigpen*, 941 F.2d at 1499 (Department of Corrections policy); *Stine*, 675 F.2d at 70-71 (court-ordered probation condition). Here, the government asks us to balance Mr. Herring's privacy interest against Ms. Kennan's personal decision to take action when that action was contrary to the official guidelines of the probation department, which specifically disavowed any governmental interest whatsoever in the disclosure of HIV information.

12

privacy right to the non-disclosure of confidential information and that this constitutional right applies to prisoners and probationers and unless limited by a legitimate governmental interest. [8] Because Ms. Keenan lacked any legitimate, probationary interest in disclosing Mr. Herring's HIV status to his family and his employer, her actions violated this clearly established law.

## B. Objective unreasonableness

Because the majority concludes Mr. Herring's claimed right was not clearly established in late 1993, it never reaches the reasonableness prong of the qualified immunity analysis. Given the lack of governmental interest in Ms. Keenan's conduct as established above, one can only conclude that it was objectively unreasonable in light of the clearly established law. Ms. Keenan's disclosure of

---

[8]The majority requires an inappropriately exacting factual similarity between prior cases and the facts *sub judice* to defeat the defense of qualified immunity. The majority concludes that Ms. Keenan should benefit from qualified immunity because in late 1993, "there were no decisions from any federal court that discussed whether a probation officer had a duty not to disclose [the probationer's confidential medical information] to a probationer's sister and his restaurant employer." Maj. Op. at 22; *see also id.* at 11, 17, 19. To demonstrate a clearly established right, a plaintiff need not identify a case holding unconstitutional the exact conduct in question. Rather, "this circuit requires only 'some but not precise factual correspondence.'" *Eastwood*, 846 F.2d at 630. While the majority gives lip service to this standard, it then turns *Griffin* on its head and rejects Mr. Herring's claim because he has not cited a federal court of appeals case with exactly the same type of plaintiff and defendant, and precisely the same type of disclosure. In so doing, the majority relieves government officials of their "incumbent" duty "to relate established law to analogous factual settings." *Id.*

13

highly sensitive confidential information was not only unauthorized, it was also criminal. Indeed, trumping all arguments to the contrary is the fact that Ms. Keenan did not even know whether Mr. Herring was actually HIV-positive; Mr. Herring only told her he might be. This final fact destroys any claim to objective reasonableness Ms. Keenan might make.

Even assuming that Ms. Keenan's concerns were remotely reasonable, there is no reason she had to act so quickly that her misconduct should be excused. *See Scheuer v. Rhodes*, 416 U.S. 232, 246 (1974) (one purpose of qualified immunity is to enable officers and officials to act swiftly when "there is obvious need for prompt action" or in "an atmosphere of confusion, ambiguity, and swiftly moving events"). She offers no reason, and I can think of none, that required her to immediately disclose Mr. Herring's HIV status, without pausing to consult the applicable probation guidelines, review state law on the subject, meet with her office's expert on state confidentiality laws, or even confirm the verity of the information she was passing along.

In sum, a reasonable probation officer in Ms. Keenan's position would have known that disclosing Mr. Herring's HIV status would violate his constitutional right to privacy.

**II**

14

I cannot agree with the majority's disregard of the clearly established law as it existed in late 1993 and its misguided analysis of the qualified immunity issue. Because Ms. Keenan's conduct violated this clear law and was objectively unreasonable, I would affirm the district court's denial of Ms. Keenan's motion to dismiss.

I respectfully **DISSENT**. I would affirm the district court's denial of Ms. Keenan's motion to dismiss on the basis of qualified immunity.

GUIDE TO JUDICIARY POLICIES AND PROCEDURES, VOL. X

CHAPTER IV.   <u>SUPERVISION SERVICES</u>

Part A.        <u>The Supervision of Federal Offenders    </u>.
               (Monograph 109)

               In June 1991, the Probation and Pretrial Services
               Division published  <u>Supervision of Federal Offenders,
               Monograph 109  </u>.  The document serves as the
               authoritative standard for community supervision of
               federal offenders.  U.S. probation officers should refer
               to the monograph for the development and
               implementation of all supervision policies and
               procedures.

Part B.        <u>Administrative Procedures for Probation and Supervision
               Release Supervision   </u>.


               . . . .


16.    <u>Supervision of HIV-Positive Offenders    </u>.

       The Judicial Conference Committee on Criminal Law and Probation
       Administration has promulgated guidelines for probation officers for
       supervising offenders who have been exposed to human immunodeficiency
       virus (HIV).  The guidelines are intended to provide guidance in
       preventing the transmission of HIV within the community as well       *as
       protecting the confidentiality of exposed persons       *.  HIV infection refers to
       the condition of persons who are known to have been exposed to HIV and
       who are either asymptomatic or have symptomatic HIV disease.  Acquired
       immune deficiency syndrome (AIDS) is the most serious form of HIV
       disease.

---

*For purposes of this Appendix, underlined emphasis is in original and italicized
emphasis is added.

*Officers in each district should learn the State laws which govern the use of HIV tests and the disclosure of their results. State statutes also address civil and criminal penalties which attach to violation of confidentiality .* *Officers should only implement the guidelines in a manner consistent with State law.* The guidelines are as follows:

A.  Officers, in consultation with the resource person in the office, should evaluate the HIV-positive person and develop a case plan, keeping in mind education, counseling, and treatment components.

B.  Officers should not supervise offenders with HIV infection, including those who have developed AIDS, differently than any other offender unless medically indicated on the basis of symptoms or coexisting infections.

C.  Officers should instruct the offender of the importance of self-disclosure of HIV infection to prospective sexual/drug partners. The individual should be advised of possible civil or criminal liabilities for transmission of HIV to another person.

D.  *Officers should not disclose HIV infection or illness information to the offender's family members, parents, or sexual/drug partners without the offender's informed, written consent. If the offender will not consent to disclosure and State law permits non-consensual disclosure to public health officials, the officer should notify such officials. Notification of other third parties is the responsibility of the exposed person.* Partner notification programs conducted by public health agencies encourage patient and physical responsibility for third-party notification and in many States assume the burden for confidentiality and ensuring notification by trained disease control specialists.

E.  Officers in all cases should first attempt to have the offender give informed, written consent authorizing the release of information about HIV infection to the U.S. marshal, residential facilities, halfway houses, and jails. In the absence of such written consent, this information should be disclosed to the U.S. marshal when a violator's warrant is issued and to the health care provider and/or supervisor of the halfway house or jail facility when the offender is placed in their custody.

F.    Officers should seek the written, informed consent of the offender before making further disclosure when information concerning an individual's HIV antibody test result or information concerning a diagnosis of HIV infection is disclosed to the officer by a third party or by the offender. In preparing the consent form, officers should attempt to obtain an authorization to disclose to those individuals who have a legitimate need to know such as sexual/drug partners, public health officials, health care and drug treatment providers, custodial officers, and the court.

When an informed, written consent is obtained, information concerning an offender's diagnosis of AIDS, positive test results for HIV, and signed consent forms should be reported in the case record, but kept in an envelope in a portion of the file marked "Confidential Information." Pretrial diversion reports, postsentence reports, and any other social history investigations contained in the offender's case file which contain such confidential medical information should also be placed in the envelope marked "Confidential Information." Redisclosure of test results or an offender's medical condition should not be made without specific additional consent by the offender.

Confidential record information should be treated like other medical record information and may be shared with other staff who are associated with the offender and have a legitimate, professional need to know.

G.    Officers should not disclose information regarding offenders with HIV infection in presentence reports without the offender's written, informed consent unless it is relevant to the offense charged such as a sexual assault. The court, however, may require the officer to disclose all known medical information about the offender in order to determine its relevancy in the disposition of the case. In this situation the officer should confidentially advise the court of the offender's positive HIV test results, current symptomatic status, and refusal to give consent for disclosure of this information pursuant to the provisions of Rule 32(c)(3)(A) of the

Federal Rules of Criminal Procedure.

H.  Printed education materials on communicable diseases and infection control precaution should be made available to all offenders in office waiting rooms and given to officers for distribution and discussion with offenders and their families. Staff may use appropriate locally available written materials from community HIV and AIDS testing and counseling sites. Officers should identify available local resources (medical, social, and psychological services for people with HIV infection and local public health agencies) and should assist their offenders upon request in gaining access to such services.

I.  *Each probation office should identify and designate an officer as an HIV resource person.* That individual will participate in regional training activities concerning HIV infection and will gain a competent understanding of information related to HIV infection. This resource person should be available to all staff within the district as a consultant on HIV infection and related issues. *Officers should consult this resource person whenever they encounter a case situation involving HIV or AIDS.* The resource person should become an expert in State confidentiality laws and should provide the office with periodic updates on the current state of the law.

. . . .

Part D.  Releasing File Information .

. . . .

1.  Releasing File Information (Probationers and Supervised Releasees) .

While a defendant may retain a copy of his/her presentence report pursuant to the provisions of Rule 32(c)(3)(A) of the Federal Rules on Criminal Procedure , probation and supervised release files are under the court's jurisdiction. *Disclosure of the content of the files is the prerogative of the court* . Files are maintained for the primary purpose of reporting to the court on the conduct and condition of probationers (18 U.S.C. §§ 3563 and 3565), and to aid persons under supervision to bring about improvements in their conduct and condition. The court has a need for

a free flow of information regarding the conduct of those under supervision.  Persons who provide information to the probation officer, including the offender, should feel secure in giving information and know it will be used primarily by the court.     *Indiscriminate dissemination of information should be avoided.    . . . .*

. . . .

2.    <u>Disclosure of Third Party Risk Information (Probationers and Supervised Releasees)</u>   .

Probation officers have an equal obligation to control risk to the public and provide correctional treatment to the offender.  In meeting these obligations, the officer has a duty to warn     <u>specific</u>  third parties of a <u>particular</u>  prospect of harm,   <u>physical</u>  or <u>financial</u> , which the officer "reasonably foresees" the offender may pose to them.  This obligation exists whether or not the third party has solicited the information.

The Office of General Counsel has provided standards for disclosure of information concerning risk in probation and supervised release cases as follows:

A.    The circumstances of all offenders under supervision should be reviewed periodically to determine whether they might pose a reasonably foreseeable danger to a third person.

B.    Guidelines for disclosures of third party risk information are <u>selective</u> .  A warning is   <u>not</u> required in every case, <u>only</u> where a <u>reasonably foreseeable</u>   risk of harm to a <u>specific</u>  third party is believed to exist.

C.    *The requirement an offender under supervision refrain from engaging in a particular type of employment or inform his employer or another specified third party about his criminal conviction should generally be imposed by the court as a formal special condition of probation.*     See <u>United States v. Alexander</u> , 743 F.2d 472, 480 (7th Cir. 1984).  Such a condition is unnecessary if the offender is willing to comply with the disclosure requirement and it is not an adversary issue.

D.   A disclosure requirement must be reasonably related to the correctional treatment of the offender and/or the protection of the public.

  (1)   Determination of Risk   .

  The determination of whether a "reasonably foreseeable" risk exists depends upon a selective, case-by-case evaluation. Among other factors, the evaluation should be based upon the offender's employment, offense, prior criminal background, and conduct. The officer should pay special attention to employment or other circumstances which present the offender with an opportunity or temptation to engage in criminal or antisocial behavior related to the offender's criminal background.

  (2)   "Reasonably Foreseeable" Risk   .

  *"Reasonably foreseeable" risk means the circumstances of the relationship between the offender and the third party (e.g., employer and employee) suggest the offender may engage in a criminal or antisocial manner     similar  or related  to past conduct.*

  (3)   Making Disclosure Decisions    .

    (a)   If the probation officer determines     no reasonably foreseeable risk exists, then     no warning should be given.

    (b)   If the officer determines a reasonably foreseeable risk exists, the officer should decide, based upon the seriousness of the risk created and the possible jeopardy to the offender's employment or other aspects of rehabilitation, whether to: give no warning, but increase the offender's supervision sufficiently to minimize the risk; give no warning, but preclude the offender from the employment; or give a confidential warning to the specific third party sufficient to put the party on notice of the risk.

The officer may permit the offender to make the disclosure with the understanding the officer will verify it.

(c) *If the court has not imposed a special condition precluding the offender from specified employment or requiring a warning to a specific third party, decisions regarding disclosure or alternative action must be approved by the officer's supervisor or the chief probation officer. Such approval should be in writing.*

(d) *If the officer decides to preclude the offender from a particular job or type of employment, and the offender is unwilling to comply, the officer should request the court hold a hearing on modification of conditions. Rule 32.1, Federal Rules of Criminal Procedure .*

(e) *If the officer decides to warn the offender's employer or another specific third party, and the offender strongly opposes such action, the officer should present the matter to the court and request either an order directing the officer to make the warning or a modification hearing to impose a condition that the offender make the necessary disclosure.*

Any questions concerning the propriety of a disclosure under these guidelines that cannot be resolved after consultation with the supervisor and chief probation officer may be directed to the Office of General Counsel.

Examples of appropriate disclosure decisions are as follows:

. . . .

P, a financial scheme criminal, starts his own "home security" business. Although P could use information gained in the business to burglarize homes or sell the security plans to the underworld, neither possibility is very similar to his criminal

conviction. On these facts a risk exists, but not a <u>reasonably</u> foreseeable risk. <u>No warning disclosure should be made</u>. The officer should simply monitor P's monthly financial records, income, and lifestyle.