**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 1999**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

---

DAVID PRAGER, III,

      Plaintiff-Appellee,

v.

JOHN D. LaFAVER, Secretary of the
Kansas Department of Revenue, In His
Personal Capacity,

      Defendant-Appellant,

No. 98-3116

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 97-CV-4216-DES)

---

Thomas V. Murray (Cheryl L. Jackson and Terence E. Leibold, with him on the
briefs) of Barber, Emerson, Springer, Zinn & Murray, L.C., Lawrence, Kansas,
for Defendant-Appellant.

Alan V. Johnson of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C.,
Topeka, Kansas, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **MAGILL**,[*] and **EBEL**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

---

    [*] The Honorable Frank J. Magill, Senior United States Circuit Judge,
United States Court of Appeals for the Eighth Circuit, sitting by designation.

John LaFaver, the Secretary of the Kansas Department of Revenue, fired David Prager, III, a former attorney with that organization, after Mr. Prager wrote several letters critical of the Department to Governor William Graves. Mr. Prager sued Mr. LaFaver for depriving him of his First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Mr. LaFaver filed a motion to dismiss based on qualified immunity and attached several documents thereto, including a letter from Mr. Prager to the Governor and several letters from Mr. LaFaver to Mr. Prager. The district court refused to consider the additional materials and treated defendant's motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). It denied the motion as to the First Amendment claim and granted the motion with leave to amend as to the Fourteenth Amendment claim. Mr. LaFaver appeals, claiming that the district court erred by refusing to consider the materials appended to his motion to dismiss, and by denying him qualified immunity. We affirm.

I.

Mr. Prager was employed as senior tax attorney with the Kansas Department of Revenue.[1] In that capacity, he believed that the Department of

---

[1] Because this appeal arises from a motion to dismiss pursuant to rule 12(b)(6), we accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the nonmoving party. *GFF Corp. v.*

-2-

Revenue was erroneously interpreting a Kansas statute, resulting in a significant illegal tax abatement to a corporation. On October 31, 1996, he wrote a memorandum to his supervisor, Richard Oxendale, General Counsel for the Department of Revenue, analyzing the legal issue, explaining the mistake, and requesting a meeting with Mr. Oxendale and Mr. LaFaver to discuss the matter. Mr. Oxendale never arranged the requested meeting.

On December 18, 1996, Mr. Prager sent a letter to Governor Graves discussing several problems within the Department of Revenue. He asserted that a tax abatement in a well-publicized case involving La Siesta Foods, Inc. was illegal.[2] He also addressed the role of political influence in the Department of Revenue's administrative process. Finally, he discussed the public's negative perception of the Department.

Because of this letter, Mr. LaFaver wrote to Mr. Prager on January 8, 1997, suspending him from his employment with pay. Mr. LaFaver opened by saying, "I am in receipt of your unfortunate correspondence to the Governor regarding an array of tax issues at the Department of Revenue." Aplt. App. at 3. He continued, "That you chose to send such a letter to the Governor without discussing it with the General Counsel or me reflects poorly upon your judgment

_Associated Wholesale Grocers, Inc._, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] Mr. Prager's October memorandum to Mr. Oxendale did not pertain to the La Siesta Food abatement.

-3-

and your willingness and ability to work as member of this team." *Id.* Mr. Prager appealed his suspension, claiming that Mr. LaFaver retaliated against him for reporting the illegal tax abatement, thereby violating Kan. Stat. Ann.§ 75-2973 (West 1996 Supp.), the Kansas whistle-blower statute.

In March 1997, Mr. Prager wrote another letter to Governor Graves expressing the concerns voiced in the October 1996 memorandum to Mr. Oxendale. He sent copies to Mr. LaFaver and Mr. Oxendale. Mr. LaFaver responded on May 9 advising Mr. Prager that he would be terminated from his employment with the Department of Revenue effective May 16. After his termination, Mr. Prager filed this action.

## II.

We must first address whether the district court is required to consider materials that a defendant attaches to his motion to dismiss. Mr. LaFaver attached Mr. Prager's December 18 letter to Governor Graves and Mr. LaFaver's January 8, May 9, May 16, and July 30 letters to Mr. Prager. Mr. LaFaver did not attach Mr. Prager's October 31 memorandum to Mr. Oxendale nor his March 17 letter to the Governor. The district court refused to consider any of the attached materials, deciding the motion on the basis of the complaint and answer.

Mr. LaFaver asserts that the court was required to consider the documents attached to its rule 12(b)(6) motion, and that its failure to do so constitutes reversible error. Specifically, he argues that because Mr. Prager referred to and quoted from several of the letters in the complaint, those material should be considered part of the pleadings. Mr. LaFaver recognizes that some of the attached letters were not referenced in Mr. Prager's complaint but contends that those materials are necessary to "complete the entire documentation surrounding the termination." Aplt. Br. at 12 n.8.

Mr. LaFaver primarily relies on *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997), to support this argument. In *GFF Corp.*, this court upheld the district's court consideration of a letter that the plaintiff alleged satisfied the statute of frauds but did not attach to its amended complaint. *Id.* at 1385. We noted that, in general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings. *Id.* at 1384.[3] We then continued:

---

[3] In fact, Fed.R.Civ.P. 12(b) specifically provides:
> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.

*Id.*; *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (noting that documents are not "outside the pleadings" if they are "referred to in the plaintiff's complaint and are central to his claim").

We find nothing in *GFF Corp.* that *requires* the district court to consider the materials Mr. LaFaver attached to his motion. We agree that *GFF Corp.* supports the proposition that the district court could have considered those documents Mr. Prager referred to in his complaint which were central to his claim without converting Mr. LaFaver's motion into one for summary judgment. Nevertheless, *GFF Corp.* did not purport to decide whether consideration of materials appended to a motion to dismiss is mandatory or discretionary. Numerous other circuits use language indicating district court's have discretion in deciding whether to consider such materials. *See, e.g.*, *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court *may* consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .") (emphasis added); *Wright*, 29 F.3d at 1248 ("[D]ocuments attached to a motion to dismiss [that] are

referred to in the plaintiff's complaint and . . . central to his claim . . . *may* be considered by a district court ruling on the motion to dismiss.") (emphasis added); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, *may* be considered in ruling on a 12(b)(6) motion to dismiss.") (emphasis added); *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court *may* consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.") (emphasis added); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]hough the district court . . . declined to consider these exhibits, it *could* have viewed them on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiff's claim.") (emphasis added). We agree with our sister circuits that if a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials.

Here, the district court acted well within its discretion in declining to consider the documents attached to Mr. LaFaver's motion to dismiss. The attachments were both over-inclusive and under-inclusive. While Mr. LaFaver

appended several documents referenced in Mr. Prager's complaint, he excluded two others, namely the October 31 memorandum to Mr. Oxendale and the March 17 letter to Governor Graves. In addition, Mr. LaFaver attached two documents, the letters of May 16 and July 30, that Mr. Prager did not refer to in his complaint. Given that state of the record, it was reasonable for the district court to decide the motion without consideration of any of the appended materials.

III.

We now turn to the merits of Mr. LaFaver's motion to dismiss on the basis of qualified immunity. We review a district court's decision to grant or deny a motion to dismiss de novo. *See GFF Corp.*, 130 F.3d at 1384. A defendant may immediately appeal the denial of a 12(b)(6) motion based on qualified immunity to the extent that denial turns on an issue of law. *See Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).[4]

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil

---

[4] Mr. Prager contends we lack subject matter jurisdiction over the qualified immunity appeal because the district court merely held there were fact issues precluding a dismissal. *See Johnson v. Jones*, 515 U.S. 304, 313-14 (1995). We disagree. For the reasons set out *infra*, this appeal involves issues of law.

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 592-93 (10th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1994)); *see also Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) ("If [defendants'] actions are those that a reasonable person could have believed were lawful, defendants are entitled to dismissal before discovery."). Qualified immunity protects government officials from being subjected to the burdens of discovery and trial in meritless cases. *See Harlow*, 457 U.S. at 818.

Mr. LaFaver contends the law did not clearly establish that the First Amendment protected Mr. Prager's speech. *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), and its progeny set forth the applicable framework for determining the First Amendment rights of public employees like Mr. Prager. *See Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995). Under this framework, we must first decide whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983). We determine this "by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. If the speech addressed a matter of public concern, we must next balance the employee's "interest in making [his] statement against 'the interest of the State,

as an employer, in promoting the efficiency of the public services it performs through it employees.'" *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (quoting *Pickering*, 391 U.S. at 568). These two steps in the inquiry present legal issues to be resolved by the court. *See Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996).[5]

We first address whether Mr. Prager's speech touched on matters of public concern. "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns matter of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988); *see also Considine v. Board of County Comm'rs*, 910 F.2d 695, 700 (10th Cir. 1990) (discussing Tenth Circuit cases in which whistle blowing activity was held to touch on matters of public concern); *cf. Ramirez*, 41 F.3d at 595. We must discern "whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway*, 853 F.2d at 796.

Mr. Prager's letters discussed illegal tax abatements, the pervasive effect of political influence in the state tax system, and the negative perception of the

---

[5] The final two steps, whether the protected speech was a substantial or motivating factor in the decision, and whether the employer would have reached the same decision absent the protected conduct, present questions of fact to be resolved by the jury, *Gardetto*, 100 F.3d at 811, and we do not consider them here.

-10-

Department of Revenue. All of these issues, and in particular Mr. Prager's disclosure of governmental corruption, relate to matters of "political, social or other concern to the community." *Connick*, 461 U.S. at 146; *see also Conaway*, 853 F.2d at 796-97. Under the clearly established law of this circuit, Mr. Prager's speech, as described by this record, touched on matters of public concern.

We must next engage in the *Pickering* balancing test, weighing the employee's right to speak on matters of public concern against government-employer's interest in efficiency. 391 U.S. at 568. "When balancing the rights of the employee against those of the employer, an employee's First Amendment interest is entitled to greater weight where he is acting as a whistle blower in exposing government corruption." *Conaway*, 853 F.2d at 797. In evaluating the employer's interest, courts consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388. Nevertheless, an employee's speech will not be left unprotected simply because his "whistle blowing might jeopardize the harmony of the office or tarnish the integrity of the department." *Conaway*, 853 F.2d at 798; *see also Ramirez*, 41 F.3d at 595. Speculative assertions of workplace disruption are also insufficient, *see Wulf*, 883

F.2d at 862; rather, the employer must show "'actual disruption of services which results from the employee[s'] speech.'" *Ramirez*, 41 F.3d at 594 (quoting *Schalk*, 906 F.2d at 496).

On this record, we must balance Mr. Prager's constitutional right to expose governmental misconduct against little evidence of governmental disruption. Mr. Prager's whistle blowing activity is entitled to substantial weight. *See Conaway*, 853 F.2d at 797. The only hint of governmental disruption comes from brief portions of Mr. LaFaver's letters quoted in the complaint. In the May 9 termination letter, Mr. LaFaver stated that Mr. Prager's insubordination and disclosure of privileged material, inter alia, "caused undue disruption of the normal operation and proper functioning of this Department." Aplt. App. at 5. Given that Mr. Prager's letters accused Mr. LaFaver of granting an illegal tax abatement, it is unsurprising that it created office tensions; however, that in itself does not render Mr. Prager's speech unprotected. *See Conaway*, 853 F.2d at 798; *cf. Wulf*, 883 F.2d at 862 ("In sum, there is simply insufficient evidence that the *letter itself* interfered with effective functioning of the police department. Rather the evidence supports the conclusion that Wulf's letter was seeking to rectify malfunctions already present in the department."). Moreover, to the extent the complaint alleges that Mr. LaFaver hid his true motivation for suspending and terminating Mr. Prager behind the guise of promoting efficiency, we must accept

-12-

that contention as true.  We also note that Mr. Prager kept his speech within the Kansas state government, and did not speak to the press or public.  *Cf. Conaway*, 853 F.2d at 797-98.  Not surprisingly, Mr. Prager's First Amendment right outweighs unsubstantiated claims of governmental disruption.

We turn to the question of whether this law was clearly established when Mr. LaFaver acted against Mr. Prager.  We recognize "a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate."  *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 (10th Cir. 1989), *overruled on other grounds*, 928 F.2d 920 (10th Cir. 1991) (en banc).  Nevertheless, "to the extent that courts in analogous (but not necessarily factually identical) cases have struck the necessary balance, government officials will be deemed 'on notice.'" *Id.* n.36.  Our decisions in *Conaway*, 853 F.3d at 797, and *Ramirez*, 41 F.3d at 595, clearly established that an employee's strong interest in disclosing governmental corruption outweighs unsubstantiated assertions of workplace disruption, and put Mr. LaFaver on notice that the conduct alleged in Mr. Prager's complaint would violate the law.  We therefore hold the law was clearly established in Mr. Prager's favor at the time Mr. LaFaver suspended and terminated him.

IV.

We **AFFIRM** the district court's denial of Mr. LaFaver's motion to

dismiss.[6]

---

[6] We note that Mr. LaFaver may raise the issue of qualified immunity again on a motion for summary judgment after the record is more developed.  *See Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 595 (10th Cir. 1994); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992).