Deborah SIVULICH–BODDY,
Plaintiffs,

v.

CLEARFIELD CITY, a municipal corporation of Utah,
Defendant.

No. 1:03CV00021.

United States District Court,
D. Utah,
Central Division.

April 15, 2005.

Lois A. Baar, Esq., Janove Baar Assoc., Salt Lake City, UT, for Plaintiffs.

Robert H. Wilde, Esq., Robert H. Wilde PC, Midvale, UT, for Defendant.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant Clearfield City's and Chief of Police Morton Sparks' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing on Clearfield City's motion was held on March 3, 2005. At the hearing, Plaintiff was represented by Reed Pruyn Goldstein and Defendant was represented by Ellen Kitzmiller. The court took the matter under advisement. The court concludes that oral argument on Sparks' Motion to Dismiss would not materially assist it in the determination of the motion. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order on both the City's and former Police Chief Morton Sparks' Motion to Dismiss.

## BACKGROUND

Plaintiff Deborah Sivulich–Boddy is suing her former employer, the Clearfield Police Department, for violations of Title VII and violations of § 1983, and former Police Chief Morton Sparks for violations of § 1983 and intentional interference with a contractual relationship.

Plaintiff worked for the Clearfield Police for almost 12 years, from January 1990 to December 2001. She was promoted to Corporal after six years with the department, but relinquished the position within six months and returned to patrol to accommodate schedule changes associated with her enrollment in a master's program for organizational management at the University of Phoenix. She completed her master's program and in 1998 was chosen as the first female officer to participate in the county-wide Davis Metro Narcotics Strike Force, which investigates illegal drug use. The Strike Force is composed of officers from law enforcement agencies across Davis County, usually with one officer from the Clearfield police. About six months after her assignment, Plaintiff was discharged from the Strike Force allegedly because she was "unfit" to be a member. She asserts that two supervisors expressed their belief that women did not make good Strike Force members. She also claims that Chief Sparks was told male officers did not trust her to "respond in emergency situations."

Five months later Plaintiff filed a sex discrimination charge against Clearfield City with the Utah Antidiscrimination Division of the Utah Labor Commission ("UALD"). Eleven months later, in October 2000, and while the discrimination charge was under investigation, the Clearfield Police Department announced three openings for Corporal. Plaintiff and four men applied for the positions. The police department filled two of the positions within a month, in November 2000, and the third position in April 2001. Plaintiff was not chosen. The last male chosen had the lowest test scores of the five applicants, half the number of years experience as Plaintiff and no academic degrees. In September 2001, Plaintiff filed a second charge of discrimination with the EEOC alleging she had been unlawfully retaliated against for filing the first complaint. Three months later, in December 2001, Sparks suspended her and put her on administrative leave for refusing to respond to a dispatch call. A month later, in January 2002, Sparks fired her. Thirteen days later, the City convened a review committee and upheld the decision to terminate.

A month later the EEOC issued its second determination, finding she was denied promotion to Corporal in retaliation for filing the first complaint, a protected activ-

ity under Title VII. She then filed a third complaint with the EEOC alleging her termination was unlawful discrimination and in further retaliation. In December 2003, the EEOC issued its third report, finding reason to believe Clearfield City had violated Title VII and issuing her a "right to sue" authorization.

## DISCUSSION

### I. Clearfield City's Motion to Dismiss

**A. Clearfield's Motion to Dismiss for failure to promote in November 2000.**

Clearfield City argues Plaintiff's claims under Title VII for failure to promote in November 2000 are time barred. Title VII requires Plaintiff to file a timely administrative claim within 300 days of the challenged action. 42 U.S.C. § 2000e–5. Clearfield argues that claims of discrimination or retaliation are not subject to the "continuing violation" theory and the hiring dates for each of the three Corporal positions are discrete and separate acts. *See Martinez v. Potter*, 347 F.3d 1208 (10th Cir.2003) (holding that a reprimand and 14–day suspension was a discrete discriminatory act that was independent from his termination six months later and both acts required the exhaustion of administrative remedies). Defendant argues the non-promotions in November 2000 and April 2001 are discrete acts and the limitations period will begin to run for each individual act from the date on which the underlying act occurred.

Conversely, Plaintiff argues there was one "single hiring process" whereby the police department announced three vacancies for Corporal, then proceeded to interview, select and announce the hiring choices. She therefore is not time barred from bringing claims related to the filling of the first two positions in November 2000 because the 300–day clock did not start ticking until the third position was filled.

The Supreme Court addressed the issue of timeliness in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106, (2002). In that case, the Court held that under Title VII an African American railroad employee was barred from recovering for discrete acts of discrimination that occurred more than 300 days from the date he filed his charge with the EEOC. *Id.* at 110–14, 122 S.Ct. 2061. The decision limits a plaintiff's potential claims by stopping the practice of "relating back" when it comes to discrete discriminatory events. *Id.* at 114, 122 S.Ct. 2061. The Tenth Circuit said the *Morgan* decision "implicitly overturns prior Tenth Circuit law" by becoming more strict with regard to "relating back." *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir.2003).

In *Davidson*, a deaf person applied to work at AOL at two separate times, with two application processes separated by more than a year. *Id.* at 1182–83. When the applicant was rejected the second time he filed a complaint with the EEOC and then sued. *Id.* at 1183. The Tenth Circuit said the two refusals to hire were discrete acts and under the principles of *Morgan* the Plaintiff was limited to recovery on the claim that occurred within the appropriate time period. *See Id.* at 1185.

In contrast, in the present case, the Clearfield Police Department made one announcement about the three vacant Corporal positions; five applicants applied and they were tested and interviewed once. Compl. 25–27. Within a month, two of the positions were filled. The third was filled five months later. The fact that she filled out one application for all three positions distinguishes her case from *Davidson*, where the plaintiff filled out two applications and was rejected twice in two separate hiring rounds.

At the motion to dismiss stage, where this court must accept all well pleaded allegations and construe them in the light most favorable to plaintiff, she has alleged enough to establish that the hiring process may have been one discrete act. Therefore the court denies the motion to dismiss for failure to promote in November 2000.

**B. Clearfield's Motion to Dismiss the Claim of Sexual Harassment in Violation of Title VII.**

■ Defendant argues Plaintiff's sexual harassment claim should be dismissed because none of Plaintiff's administrative charges assert claims of sexual harassment at any time prior to filing her Amended Complaint in August 2004. The permissible scope of a lawsuit in federal court is bounded by reference to the underlying administrative charges. Courts have found that only claims that were included in the EEOC charge or that "are like or reasonably related to the allegations of the charge and growing out of such allegations" should be considered. *See McKenzie v. Ill. Dep't. of Transp.*, 92 F.3d 473, 481 (7th Cir.1996) (internal quotation and citations omitted). Courts do not allow a Complaint to encompass allegations outside the EEOC charge because that "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *McKenzie*, 92 F.3d 473, 482.

Plaintiff contends that the term sexual harassment frames the entirety of her suit and the legal claim is based on allegations previously pled. She relies on Fed. R.Civ.P. 15(c)(2) which permits the addition of claims "arising from (the) conduct, transaction, or occurrence (or series thereof) set forth or attempted to be set forth in the original pleading." Plaintiff asserts that a hostile work environment claim is merely an alternative basis for relief under Title VII.

■ In *Morgan,* the court explained that "the very nature (of a hostile work environment claim) involves repeated conduct, (and) occurs over a series of days or perhaps years." *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061. Defendant contends there are significant differences between the discrete discriminatory acts alleged here and a hostile work environment claim. A hostile work environment sexual harassment claim depends upon an "intimidating, hostile or offensive work environment" which interferes with work performance. *See Meritor Sav. Bank, F.S.B. v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3) (1985)). The hostile work environment must be severe and pervasive and have "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment." *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998) (internal citations omitted).

■ In this case none of Plaintiff's administrative claims alleged sexual harassment or a hostile work environment. Further, the three discrete acts complained of simply do not rise to the level of a pervasive hostile work environment. The three acts are 1) removal from the Narcotics Strike Force because of gender-based discrimination, 2) non-promotion because of gender-based discrimination and retaliation and 3) termination because of discrimination and retaliation. Taken together, these acts do not constitute a severe or pervasive hostile work environment. Therefore, the sexual harassment claim is not reasonably related to the discriminatory acts contained in Plaintiff's EEOC claims. Accordingly, the court grants Defendant's motion to dismiss Plaintiff's sexual harassment claim.

### C. Clearfield's Motion to Dismiss claims pursuant to § 1983 related to removal from the Strike Force because the claims are time barred.

Defendant claims that Plaintiff's § 1983 claims related to removal from the Strike Force should be dismissed because they are time barred under Utah's four-year statute of limitations period for such claims. Defendant alleges that because Plaintiff did not assert claims under § 1983 until her Amended Complaint in August 2004 and her removal from the Strike Force was in June 1999, her § 1983 charges related to the Strike Force are time barred.

Plaintiff argues her § 1983 claims are timely because she first pled her allegations in February 2003, within the four-year limitations period. "There is simply no requirement that she had to include in her original pleading the words 'equal protection' or 'Section 1983' to put the defendants on notice she would seek all available relief from this Court based on removal from the Strike Force." Opp'n Mot. Dismiss 6. Plaintiff's February 2003 Complaint referred to the civil rights statute of § 1983 (but it was mistyped as § 1981 because of error) explicitly in paragraph 1 and not just to Title VII.

▮ Fed. R.Civ.P. 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The premise underlying Rule 15(c) is "that once notified of pending litigation over particular conduct ... the defendant has been given all the notice required for purposes of the statute of limitations." *Marsh v. Coleman Co., Inc.*, 774 F.Supp. 608, 612 (D.Kan.1991) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 n. 3, 104 S.Ct.

1723, 80 L.Ed.2d 196, (1984)). As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1385–86 (5th Cir.1994).

▮ In this case Plaintiff's February 2003 complaint was filed within the four year statute of limitations and alleged the relevant facts and charges. She referred to § 1983 in the February 2003 Complaint, although it was mistyped as § 1981. The addition of § 1983 as a legal basis for relief is grounded on the same allegations as filed administratively and originally pled. The reference to § 1983 (written as § 1981) put Clearfield and its agents on notice that she sought to vindicate violations of civil and constitutional rights. Therefore, the court denies Defendant's motion to dismiss Plaintiff's § 1983 claims on the ground that such claims are time barred.

### D. Clearfield City's Motion to Dismiss claims pursuant to § 1983 related to the First Amendment.

Defendant argues that Plaintiff's claims based on a violation of First Amendment rights should be dismissed because her complaints were essentially of a private, personal nature and did not concern the public or relate to a matter of public importance. "Instead, Plaintiff's EEOC charges concern her personal grievances against her employer, and are limited to complaints about her own personal interests, not the interests of others or of the public at large-precisely the sort of personnel matters that are not afforded First Amendment (protection)." Reply Mem. In Supp. Mot. Dismiss 7.

Plaintiff claims her allegations show grave police personnel misconduct that rises to the level of public concern necessary

to implicate the First Amendment. She claims the contents of her EEOC charges implicate "corruption, impropriety or other malfeasance on the part of (public) officials" and thus state matters of public import meriting First Amendment protection. *See Prager v. LaFaver,* 180 F.3d 1185, 1190 (10th Cir.1999); *See* Plaintiff's Opp. Mem. at 7.

 The civil rights statute 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citations omitted). The basic requirements of a complaint based upon § 1983 are: (1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiff to a deprivation of rights, privileges, or immunities secured by the Federal Constitution and laws. *See Jones v. Hopper,* 410 F.2d 1323, 1326–27 (10 Cir.1969). In order to be of First Amendment significance, any discrimination or adverse action suffered by Plaintiff must rise to a level of "public concern"; the underlying grievance must not be a purely private concern. *See Martin v. City of Del City,* 179 F.3d 882, 887–89 (10th Cir.1999).

 Courts have looked to the motive of the speaker in determining whether the speech qualifies as a matter of public concern, i.e., whether the speech was calculated to disclose misconduct or dealt with personal disputes with no relevance to the public. *See Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) (other citations omitted). If the contents of the speech are a matter of public concern, the court balances the interest of the employee, as a citizen, in commenting on those matters against the interest of the state, as employer, in promoting the efficiency of public services it performs. *See Pickering v. Board of Educ. of Township High School Dist. 205 Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In *Prager v. LaFaver,* 180 F.3d 1185 (10th Cir.1999), the court found that Mr. Prager's letters discussing illegal tax abatements, the pervasive effect of political influence in the state tax system, and governmental corruption was speech which touched on matters of public concern. *Id.* at 1190–91. In *Conaway v. Smith,* the court found public concern in the fact that the Building Inspection Department was not properly discharging its governmental responsibilities by taking special favors for government officials, illegal payoffs, and substandard electrical work which posed a danger to public life, health, and safety. 853 F.2d 789, 791 (10th Cir.1988). In contrast, in *Martin v. City of Del City,* the court found a city worker accused of sexual harassment among other things, did not state a public concern when he appealed his transfer to another job and was then fired. 179 F.3d 882, 885 (10th Cir.1999). The court found the appeal of his transfer was a matter of private concern only.

 This court grants the motion to dismiss Plaintiff's § 1983 claims based on the First Amendment because Plaintiff's complaints do not rise to the level of a public concern. Her complaints relate only to personal grievances. Also, the facts as pleaded indicate that her motive in complaining to the EEOC was concern about her personal circumstances, not an attempt to expose professional misconduct to the public. Therefore, Plaintiff's claims based on the First Amendment are dismissed.

**E. Clearfield's Motion to Dismiss claims pursuant to § 1983 related to procedural due process.**

Defendant argues Plaintiff's due process rights were not violated because she re-

ceived the two procedural protections the Supreme Court requires, namely notice and an opportunity to be heard. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Plaintiff had adequate notice when she was told she was being suspended for refusing to respond to a dispatch call and she had an opportunity to be heard when the review committee convened 13 days after her firing to determine the appropriateness of her termination.

 To assess whether procedural due process was denied, courts engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, (2) was the individual afforded an appropriate level of process. *See Montgomery v. City of Ardmore,* 365 F.3d 926, 935–36 (10th Cir.2004) quoting *Watson v. Univ. of Utah Med. Ctr.,* 75 F.3d 569, 577 (10th Cir.1996) (internal citations omitted). As a general rule, the Due Process Clause requires "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (internal quotations omitted).

 The purpose of the pre-termination hearing is to serve as "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487. In particular, a pre-termination hearing requires: (1) oral or written notice to the employee of the charges against her; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present her side of the story. *Id.* at 546, 105 S.Ct. 1487; *See also Langley v. Adams County,* 987 F.2d 1473, 1480 (10th Cir.1993). The standards for a pre-

termination hearing are notably low. *See West v. Grand County,* 967 F.2d 362, 368 (10th Cir.1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements.")

 If an employee is not able to challenge the employer's action at the pre-termination hearing, such ability must be afforded at the post-termination hearing. *See Brown v. New Mexico State Personnel Office,* 399 F.3d 1248, 1255 (10th Cir.2005). Where the "pre-termination process offers minimal opportunity for the employee to present her side of the case, the procedures in the post-termination hearing become much more important." *Id.*

 It is not disputed that Plaintiff, as a public employee, had a protected property interest in continued employment. Plaintiff alleges she was denied her due process rights because she was not given a pre-termination hearing before that property interest was taken away. Plaintiff's charging documents state that Sparks suspended her on December 5, 2001, allegedly for refusing to respond to a dispatch call. A month later, on January 4, 2002, she was fired from the Clearfield Police Department. Thirteen days later, on January 17, 2002, Clearfield City convened a review committee to determine the appropriateness of her termination. Plaintiff claims she was not given a pre-termination hearing. She also alleges she was not provided with a fair and impartial post-termination hearing or an impartial appeal board because the city attorney who responded to the EEOC complaint also advised the appeals board and is the mayor's brother. The Plaintiff also claims such factual questions can not be resolved at the pleading stage where the risk of unfairness is intolerably high. *See Staton v. Mayes,* 552

F.2d 908 (10th Cir.1977); *Hicks v. Watonga,* 942 F.2d 737 (10th Cir.1991).

The court denies Defendant's Motion to Dismiss § 1983 claims related to procedural due process. The parties dispute what, if any, opportunity Plaintiff had to present her side of the story before termination and whether the post-termination hearing was fair and impartial. Because the facts must be interpreted in a way most favorable to the Plaintiff and the facts are not entirely clear at the pleading stage, the motion to dismiss Plaintiff's due process claims is denied.

**F. Clearfield City's Motion to Dismiss § 1983 claims related to the equal protection guarantee.**

Plaintiff claims her equal protection rights were violated by the city when she was removed from the Strike Force in 1999, when she was refused promotion and when she was fired. Defendant moves to dismiss Plaintiff's claims on the grounds that Plaintiff has not alleged any facts indicating she was the victim of discriminatory conduct by an official with final policy making authority and the city did not have an official policy or custom that impinged Plaintiff's equal protection rights. Plaintiff does not claim the city had an official policy of discrimination. However, she alleges Sparks was the person with final decision making authority and this exposed the city to liability.

Defendant argues the city is not liable for the conduct of Sparks because respondeat superior will never supply a basis for municipal liability under § 1983. Defendant further claims Sparks did not have final-policy making authority because the Police Chief's actions were subject to review by a committee.

■ Municipalities are "persons" under § 1983 and, therefore, can be sued for their constitutional torts. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But Clearfield can only be held liable for "acts which the municipality has officially sanctioned or ordered," or where a decision is made by the "official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ There are three elements to determining whether an individual is a "final policymaker": (1) whether the official is meaningfully constrained "by policies not of that official's own making;" (2) whether the official's decision are final—i.e., subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Ware v. Unified School Dist.,* 902 F.2d 815, 818 (10th Cir.1990). In *Flanagan v. Munger,* the court found the city liable for the police chief's actions even when the police chief was subject to oversight by the City Manager and the City Council. 890 F.2d 1557, 1568–69 (10th Cir.1989).

The Tenth Circuit has held that, in Utah, a county sheriff has sufficient decision making authority to bind the county in a § 1983 case. *See Taysom v. Lilly,* 2000 WL 33710847, 5 (D.Utah 2000) quoting *J.B. v. Washington County,* 127 F.3d 919, 924 n. 5 (10th Cir.1997). And under Utah state law, a chief of police has the same authority as the sheriff within the boundaries of the municipality. *See* Utah Code Ann. § 10–3–913.

■ Under Tenth Circuit case law, even if Sparks' actions were subject to review by a committee, facts discovered during this litigation could demonstrate that he has sufficient decision making authority.

Therefore, the court denies the motion to dismiss § 1983 claims related to the equal protection guarantee.

### G. Clearfield City's Motion to Dismiss Claims for Injunctive Relief

At oral argument, Plaintiff stated that common law claims for injunctive relief were being abandoned. Therefore, the court takes no action on this claim.

## II. Former Police Chief Morton Spark's Motion to Dismiss

### A. Sparks' Motion to Dismiss claims pursuant to § 1983 because of timeliness.

Defendant Sparks alleges Plaintiff can not hold him accountable for his removal of her from the Strike Force in June 1999 because the four-year statute of limitations governing § 1983 had run. Sparks claims Plaintiff's original Complaint, filed in February 2003, was limited to three Title VII claims against only Clearfield City and that he was not named as a Defendant until Plaintiff filed an Amended Complaint on August 20, 2004. Therefore, Sparks argues he did not have notice she intended to sue him for removal from the Strike Force.

Plaintiff alleges her February 2003 Complaint referring to the Civil Rights statute of § 1983 (mistyped as § 1981 because of error) put Clearfield and its agents, namely Sparks, on notice that she sought to vindicate violations of civil and constitutional rights. Plaintiff claims Sparks knew of the complaint and that it substantially implicated him, even if it did not state he was a Defendant until August 2004.

The court concludes that Plaintiff's February 2003 Complaint alleged the relevant facts and charges, referred to § 1983, and put Sparks on notice about her charges because it mentioned him by name. Furthermore, Plaintiff's Amended Complaint did not add new factual situations. Plain-

tiff's later addition of Sparks as a per se Defendant did not prejudice him because he was already on notice of his part in the lawsuit. Therefore, Sparks' motion to dismiss Plaintiff's § 1983 claims based on the statute of limitations is denied.

### B. Sparks' Motion to Dismiss the claims pursuant to § 1983 based on the First Amendment.

The law on the First Amendment is the same as stated above in relation to Clearfield. This court grants Sparks' motion to dismiss because there are no set of facts that will transform Plaintiff's personal allegations into the type of comments that deserve First Amendment protection.

### C. Sparks' Motion to Dismiss claims pursuant to § 1983 based on due process rights.

The law on procedural due process rights is the same as stated above. This court denies the motion to dismiss for violations of due process rights for the same reasons, namely that there is a factual dispute about whether Plaintiff had an opportunity to respond.

### D. Sparks' Motion to Dismiss claims pursuant to § 1983 based on equal protection rights.

Sparks' argues Plaintiff's Complaint contains no allegations to support a claim of gender discrimination in connection with her termination because there was no suggestion she was treated differently from other male employees who engaged in the same or similar misconduct. Defendant argues Plaintiff supplied the legitimate, non-discriminatory reason for her termination in her Complaint, which was refusing to respond to a dispatch call. Defendant says Plaintiff has taken on the added burden of having to prove the proffered reasons was really a pretext for gender discrimination and she can not fulfill that burden.

A disparate treatment claim requires proof of discriminatory intent or motive and is governed by the *McDonnell Douglas* framework. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315 (10th Cir.1999) (referring to the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this framework, the Plaintiff has the initial burden of establishing a prima facie case of discrimination. If she does, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. If the Defendant makes such a showing, the burden reverts to Plaintiff to show the proffered reason was a pretext for discrimination. *See Apgar v. State,* 221 F.3d 1351, (10th Cir.2000). Plaintiff has to show "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995).

Tenth Circuit precedent has established that a plaintiff does not have to show differential treatment of similarly situated persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas. See id.* (citing *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1228–29 (10th Cir.2000)). Rather, to meet her prima facie burden, plaintiff need only show that she belongs to a protected class; she was qualified for her job; despite her qualifications, she was discharged; and her job was not eliminated after her discharge. *See Henderson v. Montgomery County, Kansas, Bd. of County Com'rs* 213 F.Supp.2d 1262, 1269 (D.Kan.2002).

Plaintiff has met her burden of establishing proof of a prima facie case of discrimination. Following *Henderson,* she belongs to a protected class; she was qualified for her job; she was discharged; and her job was not eliminated after her discharge. Therefore, Sparks' motion to dismiss Plaintiff's § 1983 based on violation of her equal protection rights is denied.

**E. Sparks' Motion to Dismiss claims for Injunctive Relief.**

Plaintiff has abandoned her claim for injunctive relief.

**F. Sparks' Motion to Dismiss claims for Equitable Estoppel.**

Defendant Sparks moves to dismiss Plaintiff's equitable estoppel claim because she failed to comply with the UGIA's notice requirements.

Plaintiff alleges Sparks maliciously gave a prospective employer an adverse job reference. Plaintiff claims she did not discover the adverse job reference until the EEOC issued its third determination in December 2003. By that time, the one-year period for filing a Utah Governmental Immunity Act ("UGIA") claim had run. Therefore, Plaintiff argues she is entitled to equitable estoppel of the UGIA's notice provisions.

Defendant contends that equitable estoppel should not apply to the UGIA in this situation because the doctrine should only apply where a Plaintiff does not become aware of the action because of Defendant's concealment or misleading conduct.

Defendant and Plaintiff both cite to the same case, *Warren v. Provo City Corp.,* 838 P.2d 1125 (Utah 1992), to support their argument. In that case, a pilot injured in an airplane crash sued the city for failing to enforce ordinances regulating flying clubs. *Id.* at 1127–28. Plaintiff filed a claim after the limitations period had run because the airport city manager allegedly did not return telephone calls, leaving plaintiff unaware that Provo was not enforcing its ordinances. *Id.* Plaintiff argued that the discovery rule should not apply

because there were exceptional circumstances that rendered the application of a statute of limitations irrational or unjust. *Id.* at 1129. The court said before reaching that issue, an initial showing must be made that the plaintiff did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period. *Id.* at 1129–1130. The court found he did not meet this threshold showing by failing to take reasonable steps to prosecute the claim. *Id.*

▮▮▮▮▮ Under the UGIA, a plaintiff is required to file a notice of claim within one year of the alleged injury. *See* Utah Code Ann. § 63-30-12. Generally, a cause of action accrues and the relevant statute of limitations begins to run "upon the happening of the last event necessary to complete the cause of action … [and] mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations." *Myers v. Mc-Donald,* 635 P.2d 84, 86 (Utah 1981). However, in certain instances, the discovery rule allows for the tolling of a statute of limitations to be delayed "until the discovery of facts forming the basis for the cause of action." *Id.* In *Warren,* the court recognized three circumstances when this delay applies: (1) where the discovery rule is mandated by statute; (2) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action. 838 P.2d at 1129 (Utah 1992).

▮▮▮ This court concludes that at the pleading stage there has been no evidence that it was possible for Plaintiff to discover the adverse reference until the EEOC issued its December 2003 determination.

Discovery on this issue may lead to facts that would be relevant to an analysis of the *Warren* factors. Therefore, at this stage, the court denies Sparks' motion to dismiss claims for equitable estoppel.

## CONCLUSION

Based upon the above reasoning, Defendant Clearfield's and Defendant Sparks' Motions to Dismiss are granted in part and denied in part.

Clearfield's motion to dismiss for failure to promote in November 2000 is denied because facts could demonstrate there was only one "hiring process." Clearfield's motion to dismiss the sexual harassment claims in violation of Title VII is granted because Plaintiff did not file administrative claims alleging sexual harassment or a hostile work environment and the three discrete acts complained of do not meet the standards necessary to prove a hostile work environment.

Clearfield's and Sparks' motions to dismiss the § 1983 claims related to Plaintiff's removal from the Strike Force are denied because Plaintiff put defendants on notice of her charges and referred to § 1983 in the February 2003 complaint. Clearfield's and Sparks' motions to dismiss claims under § 1983 based on the First Amendment are granted because none of Plaintiff's allegations rise to the level of a public concern. Clearfield's and Sparks' motions to dismiss § 1983 claims based on procedural due process are denied because it is not clear at this stage whether Plaintiff had an opportunity to respond. Clearfield's and Sparks' motions to dismiss Plaintiff's § 1983 claims based on the equal protection guarantee are denied because facts could demonstrate that Sparks had final decision making authority.

Finally, Sparks' motion to dismiss claims for equitable estoppel is denied because

discovery may lead to facts relevant to the proper application of the discovery rule.